The Concord Apartment House Company

*v.*

W. D. O'Brien *et al.*

*Opinion filed June 19, 1907—Rehearing denied October 9, 1907.*

1. Mechanics' liens—*what provision of contract is not waiver of lien.* A provision in a building contract specifying that all payments shall be made upon written certificates of the superintendent that such payments shall have become due according to the provisions of section 35 of the Mechanic's Lien act referring to subcontractors, and that the contractor shall furnish, when requested, "a release from any liens or right of lien," refers to liens of subcontractors when settlement shall be made with the contractor, and is not a waiver by the contractor of his own lien.

2. Same—*when contractor is relieved of his obligation to release liens.* Failure of the owner to make payments according to his agreement in a building contract, releases the contractor from his obligation to furnish the owner, upon request, releases from persons who had furnished material or labor on the contract, particularly where the owner made no request for releases until he demanded that the contractor release his own lien after a suit was begun to enforce the same.

3. Same—*when lien is not waived by taking other security.* By taking acceptances upon third persons, mostly upon the financial agents of the owner of the building, for installments of the contract price falling due during the progress of the work, the contractor does not waive his right to a mechanic's lien for the unpaid balance due upon the work, as shown by the final certificate of the superintendent.

4. Same—*what is not a new contract.* Where a building contract in writing, fixing a time for completion, final payment, etc., expires by its own limitation before the contractor, owing to the owner's delay, has begun work, and the contractor refuses to begin the work because of the advance of cost of material and labor, if the owner, recognizing the justice of the claim, endorses on the contract an agreement to pay the additional cost of labor and material, the endorsement must be regarded as an extension and modification of the old contract, and not as a new agreement which fails to fix a time for completion and final payment.

5. Same—*what is not sufficient proof to justify allowing credit to owner.* In a proceeding by the original contractor to enforce a mechanic's lien, mere proof that a sub-contractor has recovered a judgment against the owner for material furnished on the contract

does not justify allowing the owner a credit for the amount of the judgment without proof that the judgment has been paid, where, as the proof stands, the contractor is still liable to the sub-contractor for the amount of the latter's claim.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This suit was commenced in the superior court of Cook county on June 11, 1896, by the Western Planing and Manufacturing Company against the Concord Apartment House Company, appellant herein, to enforce a lien upon certain property in Chicago for material furnished. On March 11, 1898, W. D. O'Brien and Edwin H. Sedgwick, appellees herein, filed an intervening petition, claiming a lien upon the same property by virtue of a contract between O'Brien and the said apartment house company. Appellant demurred to the intervening petition, and the court, on November 6, 1899, sustained the demurrer, whereupon appellees amended the petition. Appellant again demurred, and on March 28, 1901, the court again sustained the demurrer and dismissed the amended petition for want of equity. An appeal was taken to the Appellate Court for the First District, where the decision of the superior court was reversed and the cause remanded for further proceedings. (See *Sedgwick* v. *Concord Apartment House Co.* 104 Ill. App. 5.) Upon the case being re-instated in the superior court the said apartment house company filed answer, to which O'Brien and Sedgwick replied, and the cause being at issue, the same was referred to the master for proofs and findings. The master reported, finding the equities for O'Brien and Sedgwick, to which report appellant filed exceptions. The court overruled the exceptions and entered a decree accordingly for the sum of $4105, giving the parties a lien, with power to sell the property described in the pleadings. The said apartment house company appealed to

the Appellate Court for the First District, where the decree was affirmed, and the cause comes here by appeal from the Appellate Court.

The amended petition alleges that O'Brien was in the business of contracting for steam heating, and the Concord Apartment House Company, a corporation, was the owner of a leasehold interest in certain lots described in the petition, on which said company was erecting, or was about to erect, an apartment house; that on May 28, 1895, O'Brien entered into a contract in writing with said company to put certain heating apparatus into said apartment house, which contract is set out in full in the petition. The contract contains some twelve articles of stipulation, several of which are not material to the purposes of this statement and therefore will be omitted. Article 1 provides, in substance, that O'Brien shall furnish all the material and perform all the work necessary for putting in the steam heating plant for the seven-story apartment building situated on the lots described in said article, said work and material to be done and furnished under the direction and to the satisfaction of William M. Wheatley, who shall act as superintendent, and for the purposes of this contract as agent, for the owner. Article 5 provides that "the contractor shall complete the several portions and the whole of the work comprehended in this agreement on or before September 15, 1895." Article 6 contains a stipulation that "should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or the superintendent, or of any other contractor employed by the owner upon the work, or by damages which may happen by fire, lightning, earthquake or cyclone, or by abandonment of the work by employees through no fault of the contractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid." Article 8 stipulates that the owner shall pay the contractor

$8550, subject to additions or deductions, and payable in installments, as follows: "$1500 when roughing in is done; $4000 when mains, boilers and tank are placed, provided said payments do not exceed eighty per cent of the value of the work done at the time said payments are due as above, it being the intention to reserve at all times twenty per cent of the value of the work, the balance within thirty days after completion of the work." Said section 8 also contains this further provision: "All payments shall be made upon written certificates of the superintendent, to the effect that such payments have become due and according to the provisions of section 35 of the law of Illinois referring to sub-contractors' liens, as in force since July 1, 1887, and as amended and in force July 1, 1891; also furnishing, whenever requested, to the party of second part, a release from any liens or right of lien."

After setting forth the contract the amended petition alleges that the Concord Apartment House Company by its own default delayed the work on said building so that it was impossible for O'Brien to begin work upon his contract until late in November, 1895; that during all that time he was ready, willing and anxious to begin work under his contract, and that in the meantime the price of material and labor had greatly advanced; that on or about November 25, 1895, the said apartment house company requested O'Brien to begin work under his contract, and agreed to pay him in addition to the original contract price, as damages for delay, the sum of $1500, and on December 21, 1895, endorsed said agreement, in writing, upon said written contract, as follows:

"CHICAGO, *December 21, 1895.*

"We hereby agree to pay said first party the additional sum of $1500, same being for the increased cost of material to be used in the building.

THE CONCORD APARTMENT HOUSE COMPANY,
By Carl Findeisen, *President,*
A. A. Rolf, *Secretary.*"

—also alleges that by reason of said delay said Concord Apartment House Company accorded an extension of time

for completion of the work to within one year from November 25, 1895, and that, relying on said allowance, O'Brien commenced said work and continued until August 10, 1896, when he completed his contract; that during the progress of the work he furnished, at the request of said apartment house company, extra work and material to the value of $518; that all of said work was performed to the satisfaction of said superintendent, Wheatley, who on August 10, 1896, delivered to said O'Brien his written certificate, to the effect that said work had been completed under the contract and that payment would be due thirty days from that time; that O'Brien filed his verified claim with the clerk of the circuit court on January 9, 1897, and that said statement was duly entered by the clerk as required by law, a copy of such statement being attached to the petition; that on November 28, 1898, O'Brien assigned his interest in indebtedness due him from said company to Edwin H. Sedgwick for a valuable consideration, and that there remains due and owing to him from the said company the sum of $4757.23, with interest from September 10, 1895, etc.

In the amended answer to the petition the said Concord Apartment House Company admits the contract with O'Brien of May 28, 1895, for $8550, but denies that said O'Brien ever did any work under it, and avers that the contract expired by limitation on September 15, 1895, and that on December 10, 1895, a verbal agreement was made with O'Brien to do the work specified in said written contract for $10,050, but that by said verbal agreement neither the time for completing the work nor the time for final payment was fixed; that said verbal agreement was in no sense an extension of the written contract or of any of its provisions. The answer denies that said increase of $1500 was intended as compensation for loss or damages sustained by O'Brien; denies that O'Brien performed extra work or furnished extra material; denies that the entire work under the said verbal contract was fully performed according to

the contract, under the direction and to the satisfaction of Wheatley, as superintendent; denies that Wheatley issued a statement in writing, as superintendent, to the effect that such work had been completed under said contract and that payment would be made thereon within thirty days from the date thereof; denies presentation of any such certificate or any promise to pay the same, and denies that there is anything due O'Brien or his assignee, Sedgwick, either for the original contract price or for extras. Said answer denies that O'Brien completed his work before September, 1896, and avers that he never fully performed said work as contemplated by his contract, and denies that there was any agreement for the completion of the work or for final payment within one year, etc. The answer denies the right of intervenors to any lien, because by the second paragraph of article 8 of the contract it is provided that O'Brien should furnish, whenever requested, to the said apartment house company, a release from any liens or right of lien, and the said company thereupon claimed the benefit of said provision, and demanded that O'Brien and Sedgwick "do now execute and furnish said company an absolute release and that they forthwith dismiss their said petition," etc. Said company's amended answer, filed February 20, 1904, avers that O'Brien and Sedgwick are not entitled to any lien upon the premises; because it says that O'Brien received collateral security for a large portion of the contract price of said work, specifying said securities, etc.

HELMER, MOULTON & WHITMAN, for appellant.

THOMAS B. MARSTON, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Appellant's first contention is, that the clause in the contract in which O'Brien agrees to furnish, whenever requested, a release from any liens or right of lien amounted

to a waiver of lien. The portion of the contract referred to is the last clause of section 8, viz.: "All payments shall be made upon written certificates of the superintendent, to the effect that such payments have become due and according to the provisions of section 35 of the law of Illinois referring to sub-contractors' liens, as in force July 1, 1887, and as amended and in force July 1, 1891; also furnishing, whenever requested, to the party of second part, a release from any liens or right of lien."

Section 35 of the Lien law of Illinois as in force July 1, 1887, required that when any payment became due any original contractor, or when he desired to draw any money on his contract, he should first furnish to the owner a sworn statement, giving the names of all subordinate contractors or persons furnishing material and labor. It further required that the owner should retain out of the moneys due, an amount sufficient to satisfy the subordinate contractors according to said statement, and until those conditions were complied with the contractor had no lien or right of action against the owner. The section as amended by the act in force July 1, 1891, changed the conditions imposed, to the effect that such original contractor, *as often as requested, in writing, by the owner,* should make such statement, the same to be under oath, *if required by the owner,* with a provision for forfeiture in case of failure to furnish the required statement, etc. The object of this section was to enable the owner to fully protect himself from subordinate liens when making settlement with the original contractor. The clause in O'Brien's contract refers very specifically to this section 35, and calls attention to the fact that it refers to subordinate contractors. It seems to us clear that in making this portion of their agreement the parties to this contract had in mind subordinate contractors only. The provision was inserted for the benefit of appellant, so that in settling with O'Brien it might fully guard against his subordinate contractors and material-men. The authorities

cited by counsel for appellant where liens were denied were cases in which there was a bond given or an express waiver of lien in the contract. We cannot give to the clause in question the force of an express waiver of lien. We do not think that it was intended to bind O'Brien to release his own right of lien without payment, but that he merely agreed to furnish releases from his subordinate contractors on request.

This reasoning applies with equal force to appellant's second contention, which is, that the covenant to release was an independent covenant as a part of the original contract, and did not depend for its validity on the payment of the contract price by the owner. Construing this clause to be an agreement to furnish releases from other parties, only, who might have furnished material or labor on his contract, we think O'Brien was relieved of the obligation to do so by the failure of appellant to pay according to its agreement. Besides, it is not shown, nor is it claimed, that he was even requested to furnish releases until the demand for the release of his own right of lien and for the dismissal of his petition was made during the progress of the hearing before the master.

Appellant's amended answer to the petition avers that petitioners are not entitled to a lien "because complainant O'Brien received collateral security *for a large portion* of the contract price of said work," enumerating several acceptances on various parties, amounting to some $4600. It is not contended that collateral security was taken for the whole contract price of the work done or for the amount shown to be due by the final certificate of architect Wheatley. The contract price was, by the terms of the agreement, payable in installments, upon the proper certificate of the architect. The acceptances were applied as payments upon amounts certified to be due. What more force could they have under the terms of the contract than mere partial payments? Most of them were upon W. P. Dickinson & Co.,

who were the financial agents of the appellant company, and
$150,000 of the company's bonds were placed with Dickinson & Co. for sale, and they were made the agents for
the disbursement of the proceeds of such sale. Payment by
them was payment by appellant. Mr. Rolf, an officer of
said apartment house company, testifies that when certificates were made they went over to Dickinson, and that was
the way payments were made. From the evidence it clearly
appears that O'Brien and the architect, Wheatley, met Rolf,
the secretary of the apartment house company, at Rolf's
office, where the whole matter was gone over, everything
figured into the account and a settlement arrived at. As a
result of this conference and settlement Wheatley issued his
final certificate as architect, showing the work completed in
a satisfactory manner, and further showing that there was
due O'Brien, as a final balance, the sum of $4568. This
occurred on August 10, 1896, at which time a credit of
$249.97 was entered on the certificate by agreement. All
the acceptances mentioned in appellant's answer appear to
have ante-dated August 10, 1896. The amount allowed by
the master and for which a lien was granted by the trial
court was $4105, which shows that other credits were allowed after the issue of the certificate by Wheatley.

It is contended that the evidence of the issuing of this
certificate by the architect was not sufficient. The loss of
the certificate was sufficiently shown to justify the court in
admitting proof of the contents. Rolf, the secretary of the
company, testified such a certificate was given to O'Brien.
He gave to O'Brien a statement to that effect, as follows:

"CHICAGO, *February 18, 1898.*

"This is to certify that a final certificate of $4568 was issued by
the Concord Apartment House Company in favor of W. D. O'Brien,
August 10, '96.                          A. A. ROLF, *Secy.*"

Rolf testified that the above statement was correct. In
the absence of any denial the certificate and its contents
were certainly well established.

The fifth and sixth points raised by appellant, taken together, are to the effect that to support a mechanic's lien the contract must provide for the completion of the work and the making of payment at a time fixed, and that the original contract entered into by the parties to this appeal was discharged by limitation of time and a new contract made, in which no time was fixed for completion of work and payment for same. The original contract was in writing, dated May 28, 1895. It stated the price of the work to be $8550, fixed the time for completion of the work at September 15, 1895, and provided for final payment within thirty days from the completion of the work. Said contract also provided that in case O'Brien was delayed about his work through no fault of his, the time for completion should be extended for a period equal to the time lost by such delay. The evidence shows that O'Brien was delayed through the fault of the appellant; that when the appellant asked him to go ahead with his work he refused, because the price of material and labor had increased; that appellant recognized the justice of this contention, and on December 21, 1895, made the following endorsement on the original contract:

"CHICAGO, *December 21, 1895.*

"We hereby agree to pay said first party the additional sum of $1500, same being for the increased cost of material to be used in the building.
THE CONCORD APARTMENT HOUSE COMPANY,
By Carl Findeisen, *President,*
A. A. Rolf, *Secretary.*"

Upon this endorsement O'Brien began the work and completed it on August 10, 1896, as the architect's certificate showed. The testimony of Rolf, the secretary, shows that when O'Brien refused to go ahead with the work unless the price of the work was increased, the question of the proposed increase was submitted to the board of directors of the company, and the increase, as above, was authorized. Rolf says that in that connection nothing but the proposed increase was discussed by the directors. In view of all the

facts we cannot construe this endorsement to work a new agreement upon the whole subject. It can only be taken as an extension and modification of the original contract of May 28, 1896. Under this view of the contract we think the time for the completion of the work and the making of payment was provided for sufficiently to meet the demands of the law.

Finally, it is contended that in casting up the account between the parties hereto the master improperly omitted several items that should have been credited to appellant, and also that the item of $518 for extras was improperly included in appellees' claim. It appears from the testimony of both Rolf and O'Brien that at the time of making the final certificate by Wheatley the question of extras was fully discussed between O'Brien, Rolf and Wheatley, the outcome of which was that the $518 was included on the face of the certificate and a credit of $249.97 was endorsed thereon by Rolf for extras not allowed. It is true that in his findings the master says that he finds the claim for extras, amounting to $518, was not well proven and is therefore disregarded by him; but it must be remembered that appellees claimed the $518 for extras as an additional sum. The master, finding that said item had been settled between the parties when the certificate was issued, disregarded it here and took the amount represented in said certificate as the basis for his statement of the accounts, allowing credits for such sums as were proven to have been made since the certificate was issued and charging other items becoming due appellees since August 10, 1896. We see nothing inconsistent in the master's report on this point. Appellant showed that the American Radiator Company obtained a judgment against Dickinson for $1246.08, but failed to show payment of the same or any part thereof. O'Brien is still liable to the American Radiator Company for said sum as the proof stands, and the Concord Apartment House Company should not be credited with this sum without

showing payment.   The other items called into question are small and not well proven.   We are inclined to think that the accounting was fairly done and the amount found due substantially correct.

We find no sufficient grounds for reversal in the record but are of the opinion that justice has been done the parties in this judgment, and it will be affirmed.

*Judgment affirmed.*